UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SETH TAYLOR, | ) |
| Plaintiff, | ) |
| | ) No. 3:16-cv-03257 |
| v. | ) Judge Parker |
| | ) Magistrate Judge Brown |
| DAVIDSON COUNTY SHERIFF'S OFFICE, et al., | ) |
| Defendants. | ) |

To: The Honorable Linda V. Parker, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's motion for summary judgment (Docket Entry No. 34). For the following reasons, the Magistrate Judge **RECOMMENDS** (1) that this motion be **GRANTED;** (2) that Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE**; (3) that acceptance and adoption of this Report and Recommendation constitute **FINAL JUDGMENT** in this action; and (4) that any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

## I. INTRODUCTION

Plaintiff, Seth Taylor, a pre-trial detainee in the custody of the Davidson County Sheriff's Office ("DCSO") in Nashville, Tennessee at the time of the events giving rise to this action, filed this *pro se* action under 42 U.S.C. § 1983 against Defendants: Dwayne Butler, James Lemaster, Jacob Steen, Jacob Voyles, and Jonathan Rodgers, for excessive force. Plaintiff alleges that on August 25, 2016, Defendants "physically attacked" him while he was in the custody of DCSO. (Docket Entry No. 1, at 5). Specifically, Plaintiff alleges that these Defendants maced, restrained,

and choked Plaintiff until he was unconscious and that Defendants' use of excessive force was "without reasonable cause." *Id.*

Before the Court is Defendants' motion for summary judgment (Docket Entry No. 34), contending that they are entitle to qualified immunity and Plaintiff failed to exhaust his administrative remedies. *Id.* at 6-8. Plaintiff filed a response in opposition. (Docket Entry No. 46).

## II. SUMMARY OF PERTINENT FACTS

This case arises from Plaintiff's arrest for aggravated assault and subsequent detention at the DCSO facility for a probation violation. (Docket Entry No. 34-1, Plaintiff Deposition at 3-5).[1] The incident that is the subject of this lawsuit occurred on August 25, 2016. (Docket Entry No. 36, Defendants' Statement of Undisputed Facts, at ¶ 1).[2]

DCSO facilities employ corrections officers and also contract with medical providers, including mental health professionals, to ensure the safety and security of their facilities and inmates. *Id.* at ¶ 2. Mental health professionals decide whether an inmate must be taken to a safe room for his or her own protection. *Id.* at ¶ 3. When the mental health team directs that an inmate be taken to a safe room, DCSO officers must comply with that directive. *Id.* at ¶ 4. On August 25, 2016, mental health professionals ordered that Plaintiff be taken to a safe room. *Id.* at ¶ 5.

After Plaintiff refused to speak to mental health officials, Officer Steen told Plaintiff that he was going to escort him to the safe room, but Plaintiff refused to get out of bed. (Docket Entry No.

---

[1] Citations are to the Court's ecf pagination.

[2] Defendants filed contemporaneously with their motion for summary judgment a statement of undisputed facts (Docket Entry No. 36), in accordance with Local Rule 56.01(b). Plaintiff has not filed a response to Defendants' statement of undisputed facts. Accordingly, Defendants' proffered statements of fact are undisputed for purposes of summary judgment. Local Rule 56.01(g).

2

38, Jacob Steen Declaration, at ¶¶ 6, 8). Officer Steen reported this situation to his Lieutenant, Dwayne Butler. (Docket Entry No. 39, Dwayne Butler Declaration, at ¶ 6). According to DCSO policy, Lieutenant Butler assembled an extraction team to take Plaintiff to a safe room. *Id*. at ¶ 7. The team included Defendants Lt. Butler, Officer Steen, Officer Jacob Voyles, Officer James LeMaster, and Officer Jonathan Rodgers. *Id*. at ¶ 8.

Defendants entered Plaintiff's cell and ordered him to stand to allow them to place restraints on him so that they could transport him to a safe room. *Id*. at ¶¶ 9-10. Plaintiff did not comply. *Id*. at ¶ 11. To gain compliance, a chemical spray was deployed, and Defendants took physical control of Plaintiff's legs and arms, as Plaintiff actively resisted. *Id*. at ¶¶ 12-14; Docket Entry No. 36, at ¶ 6. After a brief struggle, Defendants gained control of Plaintiff, cuffed his hands and legs, and transported him to the safe room. *Id*. at ¶ 16. Plaintiff admits that Defendant Rodgers did not put his hands on him. (Docket Entry No. 36, at ¶ 9; Docket Entry No. 34-1, at 10). Plaintiff testified that he did not know who caused his alleged injuries to his wrist, but that he suffered his injuries by Defendants improperly picking him up by his chains when his hands were cuffed behind his back and then dragging him to the safe room. (Docket Entry No. 34-1, at 10-11).

Subsequently, Plaintiff filed a grievance regarding the August 25, 2016 incident that was found to be unsustained. (Docket Entry No. 36, at ¶ 13). DCSO policy allows inmates to appeal grievance decisions, and such appeals should be made within five working days of receiving the response that is being appealed. *Id*. at ¶ 12; Docket Entry No. 37-1, at 4; Docket Entry No. 37-2, at 15. However, Plaintiff did not appeal that grievance decision with DCSO. *Id*. at ¶ 14. Grievances that repeat complaints previously made, and to which the inmate received a response, are not answered. (Docket Entry No. 37-1, at 3). Duplicate grievances will not be processed. *Id*.

3

The grievance procedures that inmates can avail themselves of to complain about staff and other conditions of confinement are separate processes within DCSO from the disciplinary procedures used to address inmates' violations of facility rules. (Docket Entry No. 36, at ¶ 15).

### III. STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "However, a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Id*. (citing *Anderson*, 477 U.S. at 251). Finally, "'[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### IV. ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a).  Thus, a prisoner must exhaust all available remedies before filing an action in court. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Such "remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). "The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'-rules that are defined not by the PLRA, but by the prison grievance process itself. . . . . The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted). "[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoners] believe the procedure to be ineffectual or futile....'" *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted). The Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citation omitted); *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.").

5

Here, the undisputed facts show that Plaintiff did not appeal the grievance decision involving the August 25, 2016, incident. In his response to Defendants' motion for summary judgment, Plaintiff merely asserts that "Plaintiff's initial grievance was ruled unsustained. Therefore any other grievance field afterwards should be considered as an appeal." (Docket Entry No. 46, at 1). Thus, because Plaintiff did not follow the grievance procedures and file a proper appeal, the Magistrate Judge concludes that Plaintiff's claims against Defendants should be dismissed for failure to exhaust administrative remedies.

## V. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** (1) that Defendants' motion for summary judgment (Docket Entry No. 34) be **GRANTED;** (2) that Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE**;[3] (3) that acceptance and adoption of this Report and Recommendation constitute **FINAL JUDGMENT** in this action; and (4) that any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within

---

[3]Although the norm in the Sixth Circuit is to dismiss actions for failure to exhaust without prejudice, the Sixth Circuit previously affirmed a decision of this court that dismissed a § 1983 action for failure to exhaust *with prejudice* where to do otherwise would be futile because the time to file a grievance had long since run. *See Howard v. State of Tennessee Department of Correction*, 1:12-00004 (M.D. Tenn., July 2, 2013)(Campbell, CJ)(dismissing cause of action with prejudice for failure to exhaust) (*aff'd* 6th Cir. No. 13-6095, mandate issued July 16, 2014 (Docs. 174-76)). Inasmuch as the alleged events that gave rise to this action occurred more than one year ago, the time for Plaintiff to exhaust his administrative remedies has long since past, and it would serve no useful purpose to dismiss this action without prejudice to give him an opportunity to exhaust his administrative remedies.

fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 2nd day of August, 2018.

/s/     Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge